JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Willshire, Sherry

## DEFENDANTS
HK Management, Vindaloo Music, Inc., and Vindaloo Music International, Inc.

(b) County of Residence of First Listed Plaintiff: **Kings County, NY**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed: **Los Angeles County, CA**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Brian N. Hail, Mary A. Goodrich, GODWIN GRUBER, LLP, 1201 Elm Street, Suite 1700, Dallas, TX 75270 (214) 939-4400

Attorneys (If Known): 3 04 - CV - 90 - G

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury—Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury—Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 330 Federal Employers' Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☒ 442 Employment | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | Habeas Corpus: | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | |
| | | ☐ 550 Civil Rights | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 555 Prison Condition | | |
| | | | ☐ 790 Other Labor Litigation | |
| | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C.§2000e   sexual harassment, retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ To be determined at trial.
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: January 16, 2004

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHERRY WILLSHIRE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | |
| HK MANAGEMENT, | § | 30               - G |
| VINDALOO MUSIC, INC. and | § | |
| VINDALOO MUSIC | § | |
| INTERNATIONAL, INC., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, SHERRY WILLSHIRE, and files this Original Complaint against HK MANAGEMENT, VINDALOO MUSIC, INC. and VINDALOO MUSIC INTERNATIONAL, INC. In support of her Original Complaint, Sherry Willshire respectfully shows the Court as follows:

### I.
### JURISDICTION AND VENUE

1.01    The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

1.02    The Court also has diversity jurisdiction, because there is complete diversity in the citizenship of the parties, and the amount in controversy exceeds $75,000.

1.03    Venue is proper under 28 U.S.C. § 1391, because actions that constituted unlawful employment actions (sexual harassment and retaliation) occurred in Dallas, Texas.

## II.
## PARTIES

2.01     Plaintiff, Sherry Willshire ("Plaintiff" or "Willshire"), is an individual who was a citizen of the state of Texas, living in Dallas County, when she was terminated and who now resides in Brooklyn, New York.

2.02     Defendant **HK Management** is a corporation organized under the laws of the State of California, and whose principal place of business is 9200 Sunset Boulevard, Suite 530, Los Angeles, California 90069. Defendant HK Management does not have a registered agent for the service of process in the State of Texas. Service of process on Defendant HK Management may be made according to the laws of the State of Texas by serving the Texas Secretary of State pursuant to Texas Business Corporations Act § 8.10 and Texas Civil Practice and Remedies Code §17.044. HK Management is required to designate and maintain a resident agent for service of process, but has failed to do so. Defendant HK Management's principal place of business is located at 9200 Sunset Boulevard, Suite 530, Los Angeles, California 90069, and notice may be served upon them by the Texas Secretary of State at that address or wherever else it may be found.

2.03     Defendant **Vindaloo Music, Inc.** is a corporation that is incorporated under the laws of the State of Massachusetts. Defendant Vindaloo Music has its principal place of business is 145 Webster Street, Suite H, Hanover, Massachusetts 02339. Defendant does not have a registered agent for the service of process in the State of Texas. Service of process on Defendant Vindaloo Music may be made according to the laws of the State of Texas by serving the Texas Secretary of State pursuant to Texas Business Corporations Act § 8.10 and Texas Civil Practice and Remedies Code §17.044. Vindaloo Music, Inc. is required to designate and maintain a resident agent for service of

process, but has failed to do so. Defendant Vindaloo Music, Inc.'s principal place of business is located at 145 Webster Street, Suite H, Hanover, Massachusetts 02339, and notice may be served upon them by the Texas Secretary of State at that address or wherever else it may be found.

2.04 Defendant **Vindaloo Music International, Inc.** is a corporation that is incorporated under the laws of the State of Massachusetts. Defendant Vindaloo Music International, Inc. has its principal place of business is 145 Webster Street, Suite H, Hanover, Massachusetts 02339. Defendant does not have a registered agent for the service of process in the State of Texas. Defendant Vindaloo Music International, Inc. does not have a registered agent for the service of process in the State of Texas. Service of process on Defendant Vindaloo Music International, Inc. may be made according to the laws of the State of Texas by serving the Texas Secretary of State pursuant to Texas Business Corporations Act § 8.10 and Texas Civil Practice and Remedies Code §17.044. Vindaloo Music International, Inc. is required to designate and maintain a resident agent for service of process, but has failed to do so. Defendant Vindaloo Music International, Inc.'s principal place of business is located at 145 Webster Street, Suite H, Hanover, Massachusetts 02339, and notice may be served upon them by the Texas Secretary of State at that address or wherever else it may be found.

### III.
### CONDITIONS PRECEDENT

3.01 All conditions precedent to the filing of this action have been fulfilled. Specially, Plaintiff timely filed two charges of discrimination against the Defendants and has received right to sue notices from the EEOC on both charges. This Complaint is brought timely, pursuant to her right

to sue notices. The right to sue notices are contained in the Appendix to Plaintiff's Original Complaint at pp. 2-5, and are incorporated herein by reference.

## IV.
## FACTUAL BACKGROUND

4.01   Sherry Willshire was employed by or under the control of or her activities were directed by HK Management, Vindaloo Music, Inc., and Vindaloo Music International, Inc. (collectively referred to herein as "Defendants"). Ms. Willshire served as an Assistant Wardrobe Manager for the rock band "Aerosmith."

4.02   During her employment, Ms. Willshire traveled with Aerosmith on several cross-country tours which included performances in Texas.

4.03   Ms. Willshire was supervised by the tour manager, Jimmy Eyers.

4.04   Throughout her employment and during performances which occurred across the country, including Texas, Mr. Eyers sexually harassed Ms. Willshire, including, but not limited to, engaging in the following actions:

> (A)   Mr. Eyers made sexually explicit comments about Ms. Willshire's body, stated that he was "horny" for her, and asked her "why not just put out for me Sheroo, it will be our secret and nobody will have to know." (Mr. Eyers called Ms. Willshire "Sheroo" even though she had asked him not to). During one occasion in particular, when Ms. Willshire did not respond, Mr. Eyers trapped her in a room by themselves, came up behind her, put his mouth against her neck, kissed her, pressed his erect groin against her body, and fondled her breast. Ms. Willshire asked him to stop but he did not.

            Instead, he made lewd, sexual comments about her body. He asked her to "put out for him" and said "nobody will ever have to know." When she failed to respond, he finally left the room.

(B)     Ms. Willshire reported Mr. Eyers conduct to John Bionelli (assistant tour manager) and Chris Roberts (stage manager). Nothing was done.

(C)     Mr. Eyers also made sexual comments to Ms. Willshire in front of Marc Hogue (production manager) and John Bionelli. They ignored the comments and took no action to correct his behavior.

(D)     After another show, Mr. Eyers approached Ms. Willshire and made a sexual comment about her appearance to the effect of "bend over Sheroo, your ass makes me hard in that skirt, bend over." Ms. Willshire asked Mr. Eyers to leave her alone. Mr. Eyers then again said "just put out for me, no one will have to know." Ms. Willshire again asked him to leave her alone.

(E)     Ms. Willshire talked to her co-workers, Dave Barrera, Archie Avilla, and Marty Gellahar about Mr. Ayer's behavior. They agreed to go with her to meet with Marc Hogue (production manager) to complain. After hearing Ms. Willshire's complaint, Marc Hogue responded that it was just Jimmy's nature. "Boys will be boys, especially pompous English boys." He said that [Jimmy] was "just a schmuck, so deal with it."

(F)     Mr. Eyers continued to make lewd sexually explicit suggestions and comments to Ms. Willshire. He made comments about her personal relationships with her boyfriend, including comments that he would not want

    to be in a hotel room next door to her, because they would keep "him up all night with your loud shagging." These comments were highly offensive to Ms. Willshire.

(G)     After Ms. Willshire was married, the harassment continued. Mr. Eyers told her, "Sheroo, just because you are married now, it doesn't mean you won't have to put out."

(H)     When Ms. Willshire was hiring a wardrobe assistant, she was informed that Mr. Eyers wanted to know "what [the new assistant] looks like, her body style and more important . . . is she of normal body weight and is she attractive?"

(I)     Over the course of her employment, Mr. Eyers physically assaulted Ms. Willshire by pulling her onto his lap on a number of occasions.

(J)     During introductions, Mr. Eyers told Ms. Willshire's new assistant, "Oh, I'm not so difficult to deal with, I just like to rub up on Sheroo every once in a while because it feels so good and all - other than that I'm not so bad."

4.05     Because Ms. Willshire refused his advances, Mr. Eyers began to retaliate against her by continuing and escalating the harassment. He made degrading comments about her new marriage and husband. He required her to perform demeaning personal tasks for him at work. This harassment and retaliation interfered with Ms. Willshire's ability to do her regular job duties.

4.06     When Ms. Willshire hurt her wrist at work and needed medical attention, Mr. Eyers yelled at her and told her to leave property immediately. Later, in front of Ms. Willshire, Mr. Eyers laughed about the incident to a co-worker, saying "Did Sherry tell you, I made her cry and told her

to leave? Ha, ha." Then he ordered Ms. Willshire, "Now make me a cup a cup of tea and be useful before you leave the building."

4.07    Mr. Eyers fired Ms. Willshire on July 23, 2001 in retaliation for her refusing his sexual advances and for her reporting his conduct to management. Ms. Willshire was a citizen of Texas and was living in Dallas, Texas at the time she was fired. In fact, Ms. Willshire was at her home in Dallas, Texas at the time of her termination. When Ms. Willshire asked why she was being fired, Mr. Eyers responded that it wasn't important and that it was just life.

4.08    Ms. Willshire then called other members of management. However, no one could or would provide her with any information about her termination.

4.09    When Ms. Willshire challenged her termination, she was given no legitimate reason for her termination. In fact, several people stated that they believed that her termination was unfair.

4.10    Ms. Willshire reported the harassment to and unfair termination to Howard Kauffman (the band's manager). His response was "As a young attractive woman in this business, sometimes this is the price you have to pay."

*LIABILITY OF DEFENDANTS*

4.11    Defendants failed to take reasonable and/or adequate steps to make certain it was in compliance with Title VII.

4.12    At all times relevant to the facts, Defendants did not have an anti-sexual harassment policy, nor did it have a qualified human resource or personnel director. In the alternative, it did not require compliance with any policy that was in place.

4.13    Defendants knew that no sexual harassment policy existed nor was one being followed. None of the Defendants took any corrective actions regarding this situation.

4.14   Defendants did not maintain an effective complaint system; did not offer sexual harassment training to its employees; nor did they ever seek to require or obtain sexual harassment training for Eyers.

4.15   Eyers had direct supervisory responsibility over Plaintiff.

4.16   Defendants were aware of Mr. Eyers conduct which caused the sexually hostile work environment at work. No corrective measures whatsoever were ever taken against Mr. Eyers. Instead, Defendants allowed Mr. Eyers to set the vile standards which were pervasive at the workplace, and wrote his conduct off as "boys will be boys," and "this is part of the price you have to pay as an attractive woman in this industry."

4.17   The inappropriate sexual conduct and harassment of female employees, including Plaintiff, was not an isolated event, but instead was routine behavior.

4.18   Defendants failed to properly and adequately investigate Plaintiff's complaints of inappropriate sexual conduct and harassment.

4.19   Defendants failed to implement any remedial measure after Plaintiff's complaints.

4.20   Plaintiffs employment was adversely affected and she was ultimately retaliated against. Defendants gave Plaintiff demeaning work duties, interfered with her ability to perform her job, altered her job duties, and ultimately terminated her employment.

    4.21    The EEOC, in its "Letter of Determination" dated September 26, 2003 stated:

> Charging Party alleges that from January 1999 through May 21, 2001, she was subjected to egregious verbal and physical sexual harassment from the Tour Manager of the band. Charging Party alleges that the sexual harassment created an abusive and offensive hostile working environment and that she was discharged in retaliation for complaining about the sexual harassment. ... The EEOC has determined that <u>there is reasonable cause to believe that Charging Party was subjected to sexual harassment causing a hostile work environment and that she was retaliated against by being discharged for protesting the sexual harassment</u>. Therefore, I have concluded that the evidence gathered in EEOC's investigation is <u>sufficient to establish a violation of Title VII</u> of the Civil Rights Act of 1964.

EEOC Letter of Determination dated September 26, 2003, contained in the Appendix to Plaintiff's Original Complaint at pp. 6-7, and incorporated herein by reference (emphasis added).

## V.
## COUNT ONE:

## VIOLATION OF TITLE VII - HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT

    5.01    Plaintiff pleads a cause of action against Defendants for hostile work environment sexual harassment in violation of Title VII. The allegations contained in all of the paragraphs of this Original Complaint are hereby reaverred and realleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim, pursuant to Rule 10 of the Federal Rules of Civil Procedure. Plaintiff further shows as follows:

    5.02    Plaintiff is an adult female and former employee of Defendants (or was under their control) and is a member of a protected class under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e, et. seq.). Defendants are subject to coverage under Title VII.

5.03   While employed with Defendants (or under their control), Plaintiff was continually exposed to a sexually hostile work environment that included, but was not limited to the acts described hereinabove.

5.04   Despite Plaintiff's complaints regarding the environment, Defendants took no action to remedy the hostile environment which existed and discouraged further complaints by Plaintiff. This hostile environment resulted in, *inter alia*, the following: interference with Plaintiff's ability to do her job; Plaintiff was treated in a degrading and demeaning fashion; and Plaintiff was ultimately terminated.

5.05   Defendants' actions and omissions created a hostile work environment for Plaintiff and that the purpose or effect of Defendants' actions and omissions unreasonably interfered with Plaintiff's work performance and created an intimidating, hostile and/or offensive work environment. These conditions lasted for an extended period of time. The conditions escalated and were so pervasive that the terms, conditions or privileges of Plaintiff's employment were detrimentally affected and created an abusive working environment.

5.06   Plaintiff has met all procedural prerequisites to bringing this Title VII claim. Further, Plaintiff is within the applicable statutes of limitations for bringing this civil action.

### VI.
### COUNT TWO: VIOLATION OF TITLE VII
### - QUID PRO QUO SEXUAL HARASSMENT

6.01   Plaintiff pleads a cause of action against Defendants for quid pro quo sexual harassment in violation of Title VII. The allegations contained in all of the paragraphs of this Original Complaint are hereby reaverred and realleged for all purposes and incorporated herein with

the same force and effect as if set forth verbatim, pursuant to Rule 10 of the Federal Rules of Civil Procedure. Plaintiff further shows as follows:

6.02 Plaintiff was subjected to discriminatory and harassing behavior of a sexual nature by Defendant Eyers, that compelled her to elect between submitting to the unwelcome sexual harassment and forfeiting job benefits, promotions, continued employment and/or otherwise tangible job detriments.

6.03 Plaintiff, while employed by Defendants (or under their control), was harassed both verbally and physically by Eyers. Plaintiff complained to management, but Defendants failed to take any action to remedy the harassing situation. As a result of Plaintiff's refusal to submit to the harassment of Eyers and to provide Eyers with requested sexual favors, Plaintiff was, *inter alia*, given demeaning job duties to perform, was unable to perform her job, and was ultimately terminated.

6.04 Plaintiff has met all procedural prerequisites to bringing this Title VII claim. Further, Plaintiff is within the applicable statutes of limitations for bringing this civil action.

## VII.
## COUNT THREE: VIOLATION OF TITLE VII - RETALIATION

7.01 Plaintiff pleads a cause of action against Defendants for retaliation in violation of Title VII. The allegations contained in all of the paragraphs of this Original Complaint are hereby reaverred and realleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim, pursuant to Rule 10 of the Federal Rules of Civil Procedure. Plaintiff further shows as follows:

7.02   Plaintiff made several complaints to Defendants regarding the inappropriate sexual conduct and sexual harassment which has been described hereinabove. Subsequent to the making of these complaints, Defendants retaliated against her for taking such action. The retaliatory conduct included, but was not limited to, *inter alia*, the following: Plaintiff given demeaning job duties to perform, was unable to perform her job, and was ultimately terminated.

7.03   Plaintiff has met all procedural prerequisites to bringing this claim pursuant to Title VII. Further, Plaintiff is within all applicable statutes of limitations for bringing this civil action.

## XIII.
## ACTUAL, CONSEQUENTIAL AND PUNITIVE DAMAGES

8.01   Sherry Willshire suffered severe and substantial damage which was directly and proximately caused by the wrongful conduct of Defendants. Such damages included but are not limited to lost wages, past and future lost earning capacity, past and future physical pain, mental anguish and emotional distress, past and future medical and/or psychological expenses, past and future impairment to the ability to enjoy life and attend to the duties of everyday living. Sherry Willshire also seeks statutory damage under Title VII, including but not limited to front pay and back pay. Sherry Willshire also suffered damage to retirement and other employment benefits.

8.02   In addition, the foregoing acts were committed by Defendants with the kind of willfulness, wantonness, fraud and/or malice for which the law allows imposition of punitive damages against said Defendants. Plaintiff is therefore entitled to exemplary damages in an amount exceeding the minimum jurisdictional limits of this Court.

## IV.
## DAMAGES FOR MENTAL ANGUISH

9.01 As a consequence of the foregoing facts and the nature of the wrongs committed against Plaintiff, Plaintiff has suffered and will continue to suffer past, present and future severe mental anguish, for which she pleads to recover at trial. The damages for Plaintiff's mental anguish exceed the minimum jurisdictional limits of this Court.

## X.
## ATTORNEYS' FEES AND COSTS

10.01 Plaintiff is further entitled to receive her reasonable court costs, attorney fees, paralegal fees, and expert witness fees (at trial and on appeal) pursuant to the Title VII.

## XI.
## INTEREST

11.01 Plaintiff is further entitled to receive pre-judgment and post-judgment interest at the highest interest rates allowed by law.

## XII.
## DEMAND FOR JURY TRIAL

12.01 Plaintiff demands a jury trial and will tender the appropriate fee for same prior to trial on the merits.

## XIII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Sherry Willshire respectfully prays that this Court grant the following relief in favor of Sherry Willshire and against Defendants, jointly, severally, individually and collectively:

(a) Actual and consequential damages in an amount to be determined at a trial on the merits;

(b) Damages for mental anguish and emotional distress suffered by Ms. Willshire in an amount to be determined at a trial on the merits;

(c) Back pay in an amount to be determined at a trial on the merits;

(d) Reinstatement, or alternatively if reinstatement is not feasible, front pay in an amount to be determined at a trial on the merits;

(e) Reimbursement for lost benefits;

(f) Punitive damages in an amount determined at a trial on the merits;

(g) Reasonable and necessary attorney fees, paralegal fees, and expert witness fees through trial and appeal in an amount to be determined at a trial on the merits;

(h) Court costs;

(i) Pre-judgment and post-judgment interest at the highest rate allowed by law; and

(j) Such other and further relief, whether at law or in equity, as the Court deems necessary and proper.

Respectfully submitted,

**GODWIN GRUBER, LLP**

By: _____
BRIAN N. HAIL
State Bar No. 08705500
MARY A. GOODRICH
State Bar No. 24002694

1201 Elm Street, Suite 1700
Dallas, Texas 75270
Telephone No. (214) 939-4400
Facsimile No. (214) 760-7332

**ATTORNEYS FOR PLAINTIFF,
SHERRY WILLSHIRE**